WASHINGTON, Judge.
The principles laid down by Huberus, and universally acknowledged, are, that the laws of every government have force within the limits of the government; and are obligatory upon all, who are within its bounds, whether subjects, or temporary residents. They have no effect, directly, with the people of any other government; but, by the courtesy of nations, to be inferred from their tacit consent, the laws, which are executed within the limits of any government, áre permitted to operate every where, provided they do not produce injury to the rights of such other government, or its citizens.
This principle is universally admitted among all civilized nations; and has’grown out of the mutual convenience which they experience from it. For, says thé sáme author, “nothing would be more inconvenient, in the promiscuous *intercourse and practice of mankind, than that, what was valid by the laws of one place, should be rendered of no effect elsewhere, by a severity of law.”
From these principles has arisen the doctrine admitted by all, that whoever makes a contract, in any particular place, is bound by the laws of that place, as a temporary citizen.
So a will or conveyance of moveable property, executed according to the forms prescribed by the laws where made, has effect in every country, though not consistent with the forms, or ceremony, tfiere observed.
But there are certain exception's from, and modifications of these rules, some of which it may be proper to mention.-
As if a person shall go into a foreign country to perform a particular act, with a view to elude the laws of his own country in fraudem legis. '
So the effects of a contract, made in one place, will be allowed according to the laws of that country, if no inconvenience results therefrom to the citizens of the country, where those laws are sought to be enforced; for the courtesy of nations could not be supposed to go so far, as to admit the force of foreign laws to produce' a prejudice to its own citizens; to which they had, by want of their own, submitted.
So if the law, of a place where a contract is made, be contrary to the laws of our own country, in which a contract is also made inconsistent with a contract made in another place, we should observe our own law, rather than the foreign one.
Let us proceed to examine this case, according to these rules: ’ '
The contract, in question, was made in Virginia, by a citizen of Maryland, with a citizen of Virginia. The contract is, therefore, subject to the laws of Virginia; and the question is, whether the laws'of a *1154 foreign country (if Maryland be such) discharging a contract, can be admitted here?
*The rule is, that the laws of a for- • eign country prevail, if not prejudicial to the country, or its citizens, and this is merely gratuitous: But to admit them to prejudice its own citizens, would be a courtesy bordering on quixotism.
No government would submit to it. No government can be presumed to have tacitly submitted to this.
But, if the citizens go abroad, and submit to their laws, as temporary subjects, they must be bound by them, though to their prejudice: if they make a contract, there, the law of that country is to prevail.
In this case, it would be a matter of choice; if the laws of that country give effect to the contract, he must submit to their laws, which discharge it.
If a will or deed is made abroad, or matrimony contracted, all the consequences follow : But, if the parties have never so submitted, no government would permit its citizens to be prejudiced by foreign laws.
Here are two conflicting laws.- One giving validitj to a contract, and governing it, throughout, to its discharge; and the other discharging it in a manner different from, and in violation of, the contract; and the appeal is made to our laws.
Which is to prevail? The rule is, ‘ ‘magis est ut in.tali.conflictu, ut jus nostrum, quam jus alienum, servemus.”
The contract in question obliges .Green-leaf to pay Banks so much money. The law of Maryland says he may deliver himself by paying .a part: If this be valid here, it would have been so, if it had said he should deliver himself without paying any part.
These laws are contradictory to each other.: What then, says the law of nations upon this subject? That the law of the country where the contract is made shall prevail: and, if the law of a foreign country be inconsistent with ours, ours shall prevail.
I think the rule may safely be laid down, that, if a foreigner come into our country and there enter into a contract, that the laws of his, nor any other foreign country can, in our courts, be received to control, alter, or discharge it, unless “'the parties, by some act of their own, submit to the laws of such foreign country.
Bet us examine the cases which have been cited at the bar, and see whether they throw light upon this subject.
The first case which I shall notice is that of Warder v. Arell, in the court of appeals of this state. 2 Wash. 298. In that, the contract was made in Pennsylvania, and discharged under the laws of that state.
That case lays down the rule as stated by Huberus, that the contract having been made' in Pennsylvania, the laws of that state must govern, not as to the form, validity, or construction of the contract, but as to the discharge: for this was the only question. The expressions of all the judges, in that case, are remarkably strong to prove,, that the ground on which the laws of Pennsylvania operating to produce the discharge, prevailed, was, that the contract was made there.
Divisme v. Martin, Wythe’s Decis. 133, was the case of British subjects altogether; but the chancellor states generally, that the remedy of an American creditor against the bankrupt, would not have been affected, by the transfer of the bankrupt’s effects to the assignees, under the English law.
Whether, if the contract had been made in England, he would have so decided, does not appear, nor was it necessary; since that was not the case before the court.
In James & Allen, 1 Dali. Rep. 188, it does not appear where the contract was made. If in Pennsylvania, I concur in the decision. If, in New Jersejq I do not; because, in such a case, the decision would go too far, if I am correct, ill the principles, before laid down.
Miller v. Hall, 1 Dall. Rep. 229, is obscurely reported, as to the state of the case; for it is doubtful, whether the agreement, which is said to have been executed in Pennsylvania, was the one made b3 Miller and Hall, with the owners of the goods; or the articles of co-partnery between Miller and Hall. The suit, as I understand it, was brought by Miller, to recover his proportion of the commission,'upon the goods sold in Massachusetts; if it means the former, then, *unquestionably, the cause of. action arose in Massachusetts ; and Hall had, by no act of his, submitted to the laws of Pennsylvania; if the latter, it might be a doubtful matter, where it arose. The doctrine I admit is laid down very broad by the chief justice, and I do not know of any case, which has gone so far as this.
Emory & Grenough, was a case decided before judge Iredell, in the circuit court of Massachusetts. The parties were citizens of Massachusetts, and the debt contracted there. The debtor afterwards, became a citizen of Pennsylvania, (not in fraudem), and obtained a certificate of bankruptcy, and pleaded it in Massachusetts; but it was not allowed.
Judge Wilson, however, decided a similar case otherwise.
We come now to the British decisions:
Solomons & Ross, 1 H. Bl. 131; Jollet & Rietveldt v. Deponthieu, 1 H. Bl. 132; Neal v. Cottingham, 1 H. Bl. 132; 1 Bac. Ab. 434, are all alike. The debts were contracted, it is probable, in Holland; at all events, it does not appear that the creditors had been in Holland, and there became the creditors of the bank. 1 H. Black. Rep. 131; Sill v. Worswick, 1 H. Black. 694, was a contract between British subjects; and the contract was made there.
It is, in this case, that the doctrine is laid down, that personal property has no locality, and is subject to the law which governs the person of the owner; but the meaning of the judge, as to this general expression, is explained; for he says, as to the disposition of it, and its transmission by succession, or the act of the party. This is all true; and is consistent, with the principle laid down. He does not contend that a contract made in St. Christopher should be governed by the laws of England ; but that, in .such a case as the one *1155 he was speaking of, the government of St. Christopher and all others, would give effect to the bankrupt laws of England; and so they ought.
*But the case of Warring and others v. Knight, mentioned by the judge, proves clearly that the place of contract would make a difference; he' says that it does not appear, whether the person was resident in Gibraltar, prior to the bankruptcy, or the debt was contracted there; or whether he appeared to the suit: facts which would have, materially, altered the decision.
In the case reported in Brown’s Ch. Rep. 376, of a payment made in Carolina, the chancellor relies upon the circumstance, that the debt was contracted, there.
Thus, I think, it is clear, that the cases, which touch this point, do in general support, and that there is not one which contradicts it, unless, it be that of Sutter and Hart, which I am not clear does do so.
I admit it is a hardship upon Greenleaf; but it would be, equally, hard upon Banks; and, therefore, it is more proper to- observe our law, than that of Maryland.
This cannot be considered as a judgment of a Maryland court, which can bind persons, residing out of that state ; they are no parties to it; the claim of the plaintiff has not been litigated, after the plaintifE and defendant had submitted to the laws of that country, and had a dispute settled, and adjudged.
Admiralty causes bind all the world; because decided, upon the laws of nations, and, for the convenience, of all nations.
But the justice of other decisions may be questioned; and if a law of a foreign country were to declare that a decision of causes without notice, should bind every body, no foreign country would observe it.
Our attachment law is fair and just; and would be regarded every where.
The next point is whether Maryland, as to her municipal regulations, is to be considered foreign to this state?
Although I am clearly of opinion that the general government derives its existence and power from the people, and not from the states, yet each state government derives its ^powers from the people of that particular state. Their forms ■of government are different, being derived from different sources; and their laws are different. Those of one state are as little ■obligatory upon another, as those of a foreign country; they are not represented, and have no control over those who made them. They cannot be said to owe allegiance to a.ny state, in which they do not reside.
What effect then has the 1st section of the 4th article of the constitution upon this subject? Read it as if it only said, full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. But for this it would be foreign, and their validity might be questioned ; but this clause forbids it: full faith must be given. Therefore, you cannot question the validity of the judgment.
This, is the construction given in the case of Armstrong v. Carson’s ex’ors, in the ■circuit court of Pennsylvania, by judge Wilson, where the doctrine was so laid down by Bradford, and admitted by Inger-sol. 2 Dali. 302.
But if there be a doubt upon those words, those which follow remove it. Congress is to prescribe the manner in which they shall be proved, and the effect thereof.
The demurrer is sustained.